ORIGINAL

FILED
FEB 1 4 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CANAL 66 PARTNERSHIP**
**d/b/a DOUBLETREE HOTEL**

**Plaintiff,**

**v.** **Case No.: 08-88 C**

**UNITED STATES OF AMERICA**

**Defendant.**

# COMPLAINT

## PARTIES AND JURISDICTION

1.

Plaintiff is Canal 66 Partnership d/b/a Doubletree Hotel ("Doubletree").

2.

Defendant is the United States of America ("Defendant").

3.

This claim arises from a breach of contract by Defendant, acting through the Federal Emergency Management Agency ("FEMA"), General Services Administration ("GSA"), and The Shaw Group Inc. (the "Shaw Group").

4.

Pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 609, Doubletree seeks a judgment by this Court. Accordingly, this Court has jurisdiction over this claim under 41 U.S.C. § 609.

**FACTS**

5.

Doubletree owns and operates the Doubletree Hotel New Orleans (the "Hotel") located at 300 Canal Street, New Orleans, Louisiana 70130.

6.

In September 2005 following Hurricane Katrina, Pat Shimon, the General Manager of the Hotel, contacted David Landers, Vice President of the Shaw Group, regarding housing for personnel with whom FEMA had contracted to help repair and rebuild the New Orleans area.

7.

The Shaw Group was the project manager working on behalf of FEMA.

8.

On September 16, 2005, Greg Grimsal, a Shaw Group employee, contacted Doubletree regarding FEMA's rental of rooms at the Hotel.

9.

FEMA asked Doubletree to guarantee that it would commit 250-300 rooms to FEMA.

10.

When FEMA made this request, Doubletree was in the process of trying itself to recover from Hurricane Katrina. Doubletree had to repair damage to the Hotel, locate its staff, and ensure that the Hotel could provide the high level of service its customers had come to expect.

11.

Nevertheless, despite these problems and challenges, Doubletree recognized the importance of housing the FEMA contract personnel as part of the early efforts to protect and rebuild New Orleans and, therefore, was eager to assist FEMA.

12.

Doubletree and its employees, which represented a greatly reduced staff, worked overtime and under very difficult conditions to prepare the Hotel for FEMA.

13.

Shelly Cambre, Doubletree's Director of Sales, sent a formal proposal to David Landers of the Shaw Group, which provided, in part:

a. 300 rooms per night at single/double occupancy (no triple/quad occupancies) were to be guaranteed;

b. Guest room rates were $129.00 per room/per night for single occupancy and $149.00 per room/per night for double occupancy plus 13% sales tax and $2.00 occupancy fee;

c. A mandatory daily $30.00 flat fee was to be charged to each guest for meals, which included a daily breakfast buffet and dinner buffet. An optional box lunch was offered for a charge of $10.00 per day based upon demand;

d. Housekeeping services were limited to one cleaning per week; however, necessary toiletries/fresh towels would be provided;

e. A parking commitment of 60 parking spaces in the hotel garage was required. The daily fee was $15.00 with in/out access and all self-parking;

f. Advance notice of rotation of guests was to be provided to avoid large check-ins and check-outs without notice; intention of 30-day minimum stay;

g. Security officers were going to be placed in the lobby and exterior of the hotel;

h. Guests were to be issued wrist bands for entrance to the hotel to ensure safety; and

i. The Contract was to run until March 31, 2006; however, a contract review date of December 30, 2005 was to be reserved to determine any changes in services/terms and/or extension of FEMA's commitment past March 31, 2006.

14.

On September 18, 2005, Doubletree received an Order for Supplies or Services (the "Contract") from FEMA. *See* Contract, attached as Exhibit "A" to Exhibit 1, Doubletree's December 15, 2006 letter to Ralph Roman, Procurement Director, U.S. Department of Homeland Security.

15.

Georgia Sells, Defendant's Contracting/Ordering Officer, signed the Contract on behalf of the United States.

16.

The Contract required Doubletree to provide (1) 250-300 rooms at $129.00-$169.00 per night, depending on the number of individuals per room, for a period of 6 months: October 1, 2005 until March 31, 2006, (2) food and beverage services for guests at a charge of $40.00 per day, and (3) 60 parking spaces for FEMA in the Hotel's parking lot at $15.00 per day/per vehicle.

17.

Under the terms of the Contract, all other incidental charges were to be borne by the tenants.

18.

Further, each party had the right to terminate the agreement after 6 months with a 30-day notice in writing.

19.

Before signing the Contract, FEMA officials approached Doubletree regarding extending the performance period.

20.

On September 30, 2005, FEMA unilaterally prepared and executed "Amendment #1" to Order No. DSFE06-05-P-6347 (the "Amendment"). *See* Amendment, attached as Exhibit "B" to Exhibit 1.

21.

The Amendment extended the performance period of the Contract until September 30, 2006.

22.

The Amendment did not exclude the termination provision from the Contract in its extension of the Contract's performance period.

23.

In response to the extension, Doubletree took a number of steps to ensure that it could honor its 250-room commitment to FEMA for the entire Contract period, ending September 30, 2006.

24.

In particular, in reliance upon Defendant's agreement to lease 250 rooms in the Hotel for the entire contract period, Doubletree stopped selling group and transient rooms through September 30, 2006.

25.

Doubletree personnel also relocated previously booked guests to other New Orleans properties to honor this commitment, which FEMA unilaterally extended through the Amendment to September 30, 2006.

26.

During the performance of its obligations, Doubletree experienced problems with FEMA's billing and payment system.

27.

On February 10, 2006, Mr. Shimon, Ms. Cambre, Mike Nichols (Doubletree's Director of Operations), and Don Bryant (Doubletree's Director of Finance) met with Ms. Tena Vollmer and Mr. Jason Harris of FEMA in Algiers, Louisiana regarding FEMA's delinquent bills.

28.

After resolution of the payment issues and in response to direct questioning by the Doubletree personnel on the issue, Ms. Vollmer and Mr. Harris *reaffirmed* FEMA's commitment to reserve 250 rooms through September 30, 2006.

29.

According to Ms. Vollmer and Mr. Harris, Doubletree and the Sheraton were FEMA's long-term housing contractors.

30.

Ms. Vollmer indicated, however, that FEMA might wish to discontinue the contracted food and beverage services.

31.

In the spirit of compromise, Mr. Shimon suggested a termination date of March 31, 2006 for the food and beverage services to allow the hotel time to convert from a banquet buffet operation.

32.

Doubletree's position was outlined in Mr. Shimon's February 10, 2006 letter to Ms. Vollmer, FEMA Comptroller. *See* Mr. Shimon's February 20, 2006 letter, attached as Exhibit "C" to Exhibit 1.

33.

Mr. Shimon's letter also *confirmed* that FEMA had *reaffirmed* its commitment to reserve 250 rooms through September 30, 2006.

34.

On February 20, 2006, Doubletree received Standard Form 30 from Kevin J. Burns, Contracting Officer, U.S. Department of Homeland Security, Joint Field Office, giving notice that the food and beverage service would terminate March 15, 2006.

35.

According to the February 20, 2006 notice, all other terms and conditions of the previous agreements remained in full force and effect, including the performance period.

36.

The Hotel's guests later received copies of flyers suggesting that March 15, 2006 was the deadline to remain in the hotel. *See* Flyer, attached as Exhibit "D" to Exhibit 1.

37.

In response to the guests' concerns, Ms. Cambre and Mr. Nichols met with Messrs. Jim Brey and Shane York of FEMA on March 3, 2006.

38.

At the March 3, 2006 meeting, Messrs. Brey and York *reaffirmed* Ms. Vollmer's previous assurance that FEMA would honor its commitment to reserve 250 rooms through September 30, 2006.

39.

After this meeting, Mr. York contacted Ms. Cambre and indicated that FEMA wished for the Doubletree to house the residents from the two Carnival Cruise ships scheduled to depart at the end of March 2006.

40.

Despite numerous reassurances given to Doubletree by Ms. Vollmer and Messrs. Harris, Brey and York, Mr. Burns delivered Standard Form 30, by facsimile, on March 27, 2006, to Doubletree, stating that:

> The Federal Government will exercise the right to exit [contract/order no. HSFE06-05-P-6347] with a 30 day notice anytime after six months from date of order. Therefore, [contract/order no. HSFE06-05-P-6347] between Canal 66 Partnership and the Government will terminate April 23, 2006. All other terms and conditions remain unchanged and in full force and effect.

*See* Standard Form 30, attached as Exhibit "E" to Exhibit 1.

41.

On March 29, 2006, Mr. Shimon wrote to Mr. Burns acknowledging receipt of the termination notice and stating Doubletree's disagreement with Mr. Burns's interpretation of the Contract. *See* Mr. Shimon's March 29, 2006 letter, attached as Exhibit "F" to Exhibit 1.

42.

Mr. Shimon explained that, in response to FEMA's contract extension, Doubletree had (1) stopped selling group rooms through September 30, 2006, (2) stopped selling transient rooms through September 30, 2006, and (3) relocated previously booked groups from the hotel to sister properties to accommodate the FEMA rooms through September 30, 2006.

43.

Also on March 29, 2006, Mr. Burns responded and asserted that the "extension of the performance period detailed in Amendment # 1 does not affect the termination provision outlined in the original agreement." *See* Mr. Burns's March 29, 2006 letter, attached as Exhibit "G" to Exhibit 1.

44.

Based upon Doubletree's understanding that Mr. Burns was no longer with the Baton Rouge Joint Field Office, Doubletree submitted its formal dispute of wrongful termination of Agreement/Purchase Order No. HSFE06-05-P6347, pursuant to 41 U.S.C. § 605 and 48 CFR § 33, to Ralph Roman, Procurement Director of the U.S. Department of Homeland Security, on December 15, 2006. *See* Exhibit 1.

45.

On February 20, 2007, Mr. Roman informed Doubletree that its "request for consideration of 'wrongful termination' under 41 U.S.C. § 605, and CFR 48 Sec 33 for subject order is hereby denied." *See* Mr. Roman's February 20, 2007 Letter, attached as Exhibit 2.

46.

In his letter, Mr. Roman found that the Defendant had the right to terminate the contract for the convenience of the Defendant pursuant to the parties' agreement in the original contract upon 30 days written notice following the "initial 6 month period." *Id.* Mr. Roman did not address the fact that Defendant had never previously claimed to have terminated the Contract for convenience nor the fact that it had not timely purported to terminate the contract.

47.

Mr. Roman's denial letter constituted "a final decision on the part of the Contracting Officer, Acquisition Gulf Coast Recovery Office as required by CFR 48 Sec. 33." *Id.*

48.

Accordingly, Doubletree has the right to bring its claims against Defendant in this Honorable Court pursuant to 41 U.S.C. § 609.

**LIABILITY OF DEFENDANT**

49.

FEMA's unilateral extension of the parties' Contract and then its premature and wrongful termination of the Contract greatly harmed Doubletree and its efforts to reopen the Hotel to the general public.

50.

In compliance with its obligation to FEMA and in reliance upon FEMA's Contract Amendment, which FEMA issued unilaterally, and FEMA's repeated promises, Doubletree (1) stopped selling group rooms through September 30, 2006, (2) stopped selling transient rooms through September 30, 2006, and (3) relocated previously booked groups from the hotel to other properties to accommodate the FEMA rooms through September 30, 2006.

51.

By committing to let 250-300 rooms from Doubletree until September 30, 2006, FEMA "bought" those rooms and effectively removed them from the market.

52.

FEMA's decision to abandon its Contract with Doubletree and renege on its own unilateral extension of the Contract prevented Doubletree from leasing those rooms.

53.

A majority of Doubletree's rooms are sold, in advance, months before their need. If Doubletree receives an order for a set number of rooms, as with the rooms requested by FEMA, those rooms are removed from the market so Doubletree can fulfill the customer's order. Future potential customers are informed that no rooms are available and directed to other properties. Thus, Doubletree's hotel rooms are a perishable commodity.

54.

When a customer cancels its rooms at the last minute, as FEMA has done here, Doubletree must attempt to sell the rooms on the open market. Should Doubletree fail to sell its rooms before the day passes, the rooms have "spoiled," and the revenue is forever lost.

55.

FEMA's actions appeared to reflect a selfishness and callousness to the effects of its actions on local businesses at a time when they already had many hurdles to overcome in trying to establish themselves in the wake of Hurricane Katrina.

56.

Doubletree honored its contractual obligations to FEMA even when FEMA acted unilaterally.

57.

FEMA did not have a right under the Contract, as amended by FEMA, to terminate the parties' agreement before the expiration of the extended performance period, that is, September 30, 2006.

## REQUEST FOR RELIEF AND DAMAGES

### COUNT I:

### COMPENSATION FOR LOST REVENUE DUE TO BREACH OF CONTRACT

58.

Doubletree repeats and re-alleges the allegations in all preceding paragraphs as though fully set forth herein.

59.

Due to FEMA's improper termination of the Contract, Doubletree suffered an unrecoverable loss in revenue.

60.

The Contract provided each party the right to terminate the agreement after 6 months with a 30-day notice in writing.

61.

As the 30-day termination notice was tied to the conclusion of the original Contract, all terms of the original Contract were extended for an additional six months, including the right of either party to terminate the agreement but only on 30-days notice after the performance period of the Contract.

62.

Contrary to its own unilateral extension, FEMA wrongfully terminated its Contract on April 23, 2006.

63.

FEMA terminated with 160 days remaining under its Contract.

64.

In addition, even if FEMA had the right to terminate the Contract at the end of the first six-month period, which Doubletree denies, FEMA did not properly terminate the Contract at that time, and its purported termination should be deemed null and void. Thus, FEMA owes Doubletree compensation for its lost revenue.

65.

Even if termination was proper, which Doubletree disputes, it was premature. By its express terms, the original Contract states that "[a]ll parties will have the right to exit after six (6) months with a 30-day notice in writing to Canal 66 Partnership DBA Doubletree Hotels."

66.

The six-month period contemplated by the original Contract ran from October 1, 2005 through March 31, 2006. Despite this requirement, FEMA delivered Standard Form 30 to the Doubletree on March 27, 2006, stating that Order No. DSFE06-05-P-6347 would terminate on April 23, 2006.

67.

The document delivered March 27, 2006 was dated March 24, 2006, that is, *before six (6) months had elapsed.*

68.

At the time of FEMA's purported termination, the six-month period required for termination on notice had not run.

69.

As a result, FEMA's notice was without effect.

70.

Under the terms of the Contract, Doubletree was required to provide, and FEMA was required to let, 250 rooms per day; therefore, FEMA was obligated to lease 40,000 room nights at a minimum rate of $129.00 per night.

71.

After FEMA's breach of the Contract, Doubletree was able to lease 10,032 of the 40,000 rooms allocated to the FEMA block, representing a loss of 29,968 room nights.

72.

Despite Doubletree's best efforts to mitigate its damages, FEMA's wrongful termination of the Contract resulted in $3,865,872 in lost revenue. *See* Calculation, attached as Exhibit "H" to Exhibit 1.

**COUNT II:**

**REMUNERATION FOR REASONABLE COSTS IF CONTRACT WAS TERMINATED FOR CONVENIENCE**

73.

Doubletree repeats and re-alleges the allegations in all preceding paragraphs as though fully set forth herein.

74.

If FEMA terminated Doubletree's contract for convenience (which was not its stated reason), Doubletree is entitled to remuneration for its reasonable costs.

75.

According to Smith Travel Research ("STR"), during calender years 2003-2005, Doubletree averaged over 100% in its Occupancy Index Average as compared to its competitive set of hotels (*See* Exhibit "I" attached to Exhibit 1). STR is the lodging industry's leading information and data provider. STR collects performance data regarding rooms available for occupancy, rooms sold, and room revenue on over 24,500 hotels representing more than 2.9 million rooms.

76.

The STR Occupancy and RevPar Index is the best measurement of whether a particular hotel is getting 100% of the average revenue per available room generated by the hotel's competitive set. Exhibit "I" is based upon information obtained from STR. As identified in the exhibit, Doubletree's competitive set includes the Courtyard Convention Center, Embassy Suites, Hilton Garden Inn, Holiday Inn Convention Center, Renaissance Arts and Renaissance Pere Marquette.

77.

Specifically, from 2003-2005, Doubletree averaged 122.2% for the month of May, 124.0% for the month of June, 133.9% for the month of July, 131.4% for the month of August, and 121.6% for the month of September as compared to its competitive set.

78.

In 2006, Doubetree's competitive set occupancy was 48.8% for the month of May, 47.0% for the month of June, 37.5% for the month of July, 50.3% for the month of August, and 50.8% for the month of September.

79.

By comparison, after FEMA wrongfully terminated the Contract and discarded the rooms it had agreed to let, Doubletree's actual occupancy for the same time period was 28.1% for the month of May, 41.0% for the month of June, 26.6% for the month of July, 33.0% for the month of August and 34.2% for the month of September.

80.

Given the performance of Doubletree's competitive set and Doubletree's historical average as established by STR, had Doubletree not removed its rooms from the market in reliance upon

FEMA's contract and subsequent promises, its occupancy rate would have been 59.6% for May, 58.2% for June, 50.2% for July, 66.1% for August, and 61.7% for September.

81.

Based upon the foregoing occupancy rates, Doubletree was prevented from leasing 14,803 rooms by FEMA's early termination of Order No. DSFE06-05-P-6347; consequently, Doubletree's reasonable charges for FEMA's breach of contract is $1,909,587, representing the rooms Doubletree lost by committing them to FEMA.

**COUNT III:**

**COMPENSATION FOR EIGHT DAYS OF LOST REVENUE DUE TO THE PREMATURE TERMINATION OF CONTRACT**

82.

Doubletree repeats and re-alleges the allegations in all preceding paragraphs as though fully set forth herein.

83.

Even if FEMA's termination were proper, which Doubletree disputes, the effective date would have been April 30, 2006, not April 23, 2006.

84.

FEMA purported to terminate the Contract, therefore, eight days early.

85.

As evidenced by Exhibit "H," Doubletree sold all but 898 of FEMA's 1,750 contracted rooms from April 24, 2006 through April 30, 2006, resulting in $115,842 in lost revenue.

86.

FEMA should, at the very least, compensate Doubletree for this loss, which resulted directly from FEMA's premature termination of the original Contract.

**COUNT IV:**

**ATTORNEYS' FEES**

87.

Doubletree repeats and re-alleges the allegations in all preceding paragraphs as though fully set forth herein.

88.

Doubletree is entitled to attorneys' fees as a result of FEMA's bad-faith conduct pursuant to 28 U.S.C. § 2412.

**COUNT V: EQUITABLE ESTOPPEL**

89.

Doubletree repeats and re-alleges the allegations in all preceding paragraphs as though fully set forth herein.

90.

FEMA knew the true facts and asked Doubletree to reserve as many hotel rooms as it could. FEMA personnel reiterated FEMA's commitment to occupy the Hotel through September 30, 2006 on multiple occasions.

91.

FEMA intended for Doubletree to act on FEMA's representations and prepare accordingly such that Doubletree had a right to believe that FEMA would honor its commitment to occupy the Hotel through September 30, 2006.

92.

Doubletree was not aware that FEMA would simply discard the rooms despite FEMA's contractual obligations and the fact that Doubletree had removed those rooms from the market for FEMA's use because of FEMA's multiple representations.

93.

Doubletree reasonably relied on FEMA's conduct to its injury.

94.

Doubletree's loss was proximately caused by FEMA's failure to honor its performance obligation under the Contract.

95.

FEMA reiterated its commitment to occupy the Hotel through September 30, 2006 on multiple occasions, knowing that Doubletree would act upon FEMA's representations and take the rooms off the market. Thereafter, FEMA wrongfully terminated the Contract prior to the end of the second six-month period, despite its representations to Doubletree. FEMA's actions constitute affirmative misconduct.

96.

Therefore, FEMA should be equitably estopped from terminating the Contract before the end of the second six-month period.

**WHEREFORE**, Doubletree prays that, after due proceedings are had, there be judgment entered in favor of Doubletree and against Defendant and that Doubletree be awarded all damages to which it is entitled due to FEMA's breach of contract and Doubletree's detrimental reliance on FEMA's promises as well as judicial interest, all costs and expenses, including, but not limited to, attorneys' fees, all pre-judgment and post-judgment interest, all other relief deemed just and equitable by this Honorable Court under the circumstances.

Dated: February 13, 2008

Respectfully submitted,

JAMES M. GARNER (Of Record)
JOSHUA S. FORCE (Of Counsel)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Twenty-Eighth Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
**ATTORNEYS FOR CANAL 66 PARTNERSHIP d/b/a DOUBLETREE HOTEL**

LAW OFFICES OF

# SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.

TWENTY-EIGHTH FLOOR
909 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70112-1033
http://www.shergarner.com

LEOPOLD Z. SHER [1]
JAMES M. GARNER [2]
ELWOOD F. CAHILL, JR.
RICHARD P. RICHTER
STEVEN I. KLEIN [1,7]
PETER L. HILBERT, JR.
MARIE A. MOORE [3]
DEBRA J. FISCHMAN
ROBERT P. THIBEAUX
DARNELL BLUDWORTH [2]
MARTHA Y. CURTIS [2]
NEAL J. KLING
KEITH A. KORNMAN [2]
JOSHUA S. FORCE [1,4]

DEBORAH J. MOENCH
DOROTHY S. WATKINS LAWRENCE [2]
JOHN T. BALHOFF, II
ALVIN C. MIESTER, III
KAREN T. HOLZENTHAL
ASHLEY S. BERGERON
CHRISTOPHER T. CHOCHELES
HOWARD T. BOYD, III [2]
RYAN D. ADAMS
THOMAS J. MADIGAN, II [5]
KEVIN M. McGLONE
CHAD P. MORROW
LAUREN L. HUDSON [3]
ELLEN PIVACH DUNBAR

JEFFREY D. KESSLER [6]
KEITH L. MAGNESS
R. SCOTT HOGAN
JONATHAN B. CERISE
ASHLEY G. COKER
AMANDA C. RUSSO
ADAM J. SWENSEK

OF COUNSEL:
TIMOTHY B. FRANCIS
DAVID A. MARCELLO

[1] LAW CORPORATION
[2] MEMBER OF LOUISIANA AND TEXAS BARS
[3] MEMBER OF LOUISIANA AND ALABAMA BARS
[4] MEMBER OF LOUISIANA AND CALIFORNIA BARS
[5] MEMBER OF LOUISIANA AND MISSISSIPPI BARS
[6] MEMBER OF LOUISIANA AND NEW YORK BARS
[7] BOARD CERTIFIED TAX ATTORNEY LOUISIANA BOARD OF LEGAL SPECIALIZATION

ALL OTHERS LOUISIANA BAR

jgarner@shergarner.com
Direct Dial: (504) 299-2102
Direct Fax: (504) 299-2302

(504) 299-2100
FAX (504) 299-2300

December 15, 2006

<u>VIA CERTIFIED U.S. MAIL NO. 7002 0860 0000 1195 0609</u>
<u>RETURN RECEIPT REQUESTED</u>
Ralph Roman, Procurement Director
U.S. Department of Homeland Security
Joint Field Office
415 N. 15th Street
Baton Rouge, LA 70802

Re: Dispute of Termination
Agreement/Purchase Order No. HSFE06-05-P-6347
Our ref: 00519.0248

Dear Mr. Roman:

Pursuant to United States Code Title 41, Section 605, and Code of Federal Regulations Title 48, Section 33, we hereby give notice of Canal 66 Partnership's (DBA Doubletree Hotel) dispute of the wrongful termination of Agreement/Purchase Order No. HSFE06-05-P6347.

| | |
|---|---|
| Name of Protestor: | Canal 66 Partnership (d/b/a Doubletree Hotel) |
| Address of Protestor: | 300 Canal Street, New Orleans, LA 70130 |
| Telephone Number: | (504) 299-2100 (Attorney contact) |
| Facsimile: | (504) 299-2300 (Attorney facsimile) |
| Contract Number: | HSFE06-05-P-6347 |

EXHIBIT
tabbles
1

Our understanding is that Kevin Burns, Contracting Officer, is no longer with the Baton

LAW OFFICES OF
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.



timeline allowed by law.

Should you have any questions, please do not hesitate to contact us.

Cordially,

James M. Garner
Joshua S. Force
Keith L. Magness

JSF/klm
Enclosure

LAW OFFICES OF

SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.

TWENTY-EIGHTH FLOOR
909 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70112-1033
http://www.shergarner.com

LEOPOLD Z. SHER [1]
JAMES M. GARNER [2]
ELWOOD F. CAHILL, JR.
RICHARD P. RICHTER
STEVEN I. KLEIN [1,7]
PETER L. HILBERT, JR.
MARIE A. MOORE [3]
DEBRA J. FISCHMAN
ROBERT P. THIBEAUX
DARNELL BLUDWORTH [2]
MARTHA Y. CURTIS [2]
NEAL J. KLING
KEITH A. KORNMAN [2]
JOSHUA S. FORCE [3,4]

DEBORAH J. MOENCH
DOROTHY S. WATKINS LAWRENCE [2]
JOHN T. BALHOFF, II
ALVIN C. MIESTER, III
KAREN T. HOLZENTHAL
ASHLEY S. BERGERON
CHRISTOPHER T. CHOCHELES
HOWARD T. BOYD, III [2]
RYAN D. ADAMS
THOMAS J. MADIGAN, II [5]
KEVIN M. McGLONE
CHAD P. MORROW
LAUREN L. HUDSON [3]
ELLEN PIVACH DUNBAR

JEFFREY D. KESSLER [6]
KEITH L. MAGNESS
R. SCOTT HOGAN
JONATHAN B. CERISE
ASHLEY G. COKER
AMANDA C. RUSSO
ADAM J. SWENSEK

OF COUNSEL:
TIMOTHY B. FRANCIS
DAVID A. MARCELLO

[1] LAW CORPORATION
[2] MEMBER OF LOUISIANA AND TEXAS BARS
[3] MEMBER OF LOUISIANA AND ALABAMA BARS
[4] MEMBER OF LOUISIANA AND CALIFORNIA BARS
[5] MEMBER OF LOUISIANA AND MISSISSIPPI BARS
[6] MEMBER OF LOUISIANA AND NEW YORK BARS
[7] BOARD CERTIFIED TAX ATTORNEY LOUISIANA BOARD OF LEGAL SPECIALIZATION

ALL OTHERS LOUISIANA BAR

jgarner@shergarner.com
Direct Dial: (504) 299-2102
Direct Fax: (504) 299-2302

(504) 299-2100
FAX (504) 299-2300

December 15, 2006

**VIA CERTIFIED U.S. MAIL NO. 7002 0860 0000 1195 0609**
**RETURN RECEIPT REQUESTED**
Kevin J. Burns, Contracting Officer
U.S. Department of Homeland Security
Joint Field Office
415 N. 15th Street
Baton Rouge, LA 70802

Re: Dispute of Termination
Agreement/Purchase Order No. HSFE06-05-P-6347
Our ref: 00519.0248

Dear Mr. Burns:

Pursuant to United States Code Title 41, Section 605, and Code of Federal Regulations Title 48, Section 33, we hereby give notice of Canal 66 Partnership's (DBA Doubletree Hotel) dispute of the wrongful termination of Agreement/Purchase Order No. HSFE06-05-P6347.

| | |
|---|---|
| Name of Protestor: | Canal 66 Partnership (d/b/a Doubletree Hotel) |
| Address of Protestor: | 300 Canal Street, New Orleans, LA 70130 |
| Telephone Number: | (504) 299-2100 (Attorney contact) |
| Facsimile: | (504) 299-2300 (Attorney facsimile) |
| Contract Number: | HSFE06-05-P-6347 |

## I. BACKGROUND

LAW OFFICES OF
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.



Doubletree Hotel New Orleans ("Doubletree"), 300 Canal Street, New Orleans, Louisiana, contacted David Landers, Vice President of the Shaw Group, regarding housing for FEMA contract personnel in the New Orleans area. On September 16, 2005, Greg Grimsal, a Shaw Group employee, contacted Doubletree regarding FEMA's rental of rooms at the Doubletree. Subsequently, Shelly Cambre, Doubletree's Director of Sales, sent a formal proposal to David Landers of the Shaw Group. Details of this proposal included:

> 300 guaranteed rooms per night at single/double occupancy, no triple/quad occupancies. Guest room rates - $129.00 single occupancy plus 13% sales tax and $2.00 occupancy fee. Double occupancy - $149.00 per room/per night. Additionally, a mandatory daily $30.00 flat fee to be charged to each guest for meals; a Daily Breakfast Buffet and Dinner Buffet are included. An optional box lunch is offered for a charge of $10.00 per day based upon demand.
>
> Housekeeping services were limited to one cleaning per week; however, necessary toiletries/fresh towels would be provided.
>
> A parking commitment of 60 parking spaces in the hotel garage. The daily fee is $15.00 with in/out access, all self parking.
>
> Advance notice of rotation of guests to be provided to avoid large check-ins and check-outs without notice; intention of 30-day minimum stay.
>
> Security officers are placed in the lobby and exterior of the hotel. Guests will be issued wrist bands for entrance to the hotel to ensure safety.
>
> Contract runs until March 31, 2006; however, a contract review date of December 30, 2005 is reserved to determine any changes in services/terms and/or extension of commitment past March 31, 2006.

Doubletree recognized the importance of housing the FEMA contract personnel as part of the early efforts to protect and rebuild New Orleans and, therefore, was eager to assist FEMA. In fact, Doubletree and its employees, which represented a greatly reduced staff, worked overtime and under very difficult conditions to ready the hotel for FEMA. Doubletree continued to devote significant resources to operate the hotel, under very difficult circumstances, throughout the duration

LAW OFFICES OF

SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.



On September 18, 2005, Canal 66 Partnership, d/b/a Doubletree Hotel, received an Order for Supplies or Services (the "Contract") from FEMA (a copy of which is attached as Exhibit "A"); Georgia Sells, Contracting/Ordering Officer signed on behalf of the United States. The Contract required Doubletree to provide (1) 250-300 rooms at $129.00-$169.00 per night, depending on the number of individuals per room for a period of 6 months: October 1, 2005 until March 31, 2006, (2) food and beverage services for guests at a charge of $40.00 per day, and (3) 60 parking spaces for FEMA in Doubletree's parking lot at $15.00 per day/per vehicle. Under the terms of the Contract, all other incidental charges were to be borne by the tenants. Further, each party had the right to terminate the agreement after 6 months with a 30-day notice in writing.

Before signing the Contract, FEMA officials approached Doubletree regarding an extension of the performance period. On September 30, 2005, FEMA unilaterally prepared and executed "Amendment #1" to Order No. DSFE06-05-P-6347 (the "Amendment") (a copy of which is attached as Exhibit "B"). The Amendment extended the performance period of the Contract until September 30, 2006. The Amendment did not exclude the termination provision from its extension of the Contract's performance period. In response to the extension, Doubletree took a number of steps to ensure that it could honor its 250-room commitment to FEMA for the entire Contract period. Importantly, Doubletree personnel relocated previously booked guests to other New Orleans properties to honor this commitment, which FEMA unilaterally extended through the Amendment to September 30, 2006.

During the performance of its obligations, Doubletree experienced problems with FEMA's billing and payment system. On February 10, 2006, Mr. Shimon, Ms. Cambre, Mike Nichols (Doubletree's Director of Operations), and Don Bryant (Doubletree's Director of Finance) met with Tena Vollmer and Jason Harris of FEMA in Algiers, Louisiana regarding FEMA's delinquent bills. After resolution of the payment issues and in response to direct questioning by the Doubletree personnel on the issue, Ms. Vollmer and Mr. Harris reaffirmed FEMA's commitment to reserve 250 rooms through September 30, 2006. According to Ms. Vollmer and Mr. Harris, Doubletree and the Sheraton were FEMA's long-term housing contractors.

Ms. Vollmer indicated, however, that FEMA might wish to discontinue the contracted food and beverage services. In the spirit of compromise, Mr. Shimon suggested a termination date of March 31, 2006 for the food and beverage services to allow the hotel time to convert from a banquet buffet operation. Doubletree's position was outlined in Mr. Shimon's February 10, 2006 letter to Ms. Tena Vollmer, FEMA Comptroller (a copy of which is attached as Exhibit "C"). Mr. Shimon's

LAW OFFICES OF
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.



notice that the food and beverage service would terminate March 15, 2006. According to the February 20, 2006 notice, all other terms and conditions of the previous agreements remained in full force and effect, including the performance period.

Doubletree guests later received copies of flyers suggesting that March 15, 2006 was the deadline to remain in the hotel (a copy of the flyer is attached as Exhibit "D"). In response to the guests' concerns, Ms. Cambre and Mr. Nichols met with Jim Brey and Shane York of FEMA on March 3, 2006. At this meeting, Messrs. Brey and York reaffirmed Ms. Vollmer's previous assurance that FEMA would honor its commitment to reserve 250 rooms through September 30, 2006. After this meeting, Mr. York contacted Ms. Cambre and indicated that FEMA wished for the Doubletree to house the residents from the two Carnival Cruise ships scheduled to depart at the end of March, 2006.

Despite numerous reassurances given to the Doubletree by Ms. Vollmer and Messrs. Harris, Brey and York, you delivered Standard Form 30 (a copy of which is attached as Exhibit "E"), by facsimile on March 27, 2006, to Doubletree stating that:

> The Federal Government will exercise the right to exit [contract/order no. HSFE06-05-P-6347] with a 30 day notice anytime after six months from date of order. Therefore, [contract/order no. HSFE06-05-P-6347] between Canal 66 Partnership and the Government will terminate April 23, 2006. All other terms and conditions remain unchanged and in full force and effect.

On March 29, 2006, Mr. Shimon wrote to you acknowledging receipt of the termination notice and stating Doubletree's disagreement with your interpretation of the Contract (a copy of Mr. Shimon's March 29, 2006 letter is attached as Exhibit "F"). As Mr. Shimon explained, in response to FEMA's contract extension, Doubletree had (1) stopped selling group rooms through September 30, 2006, (2) stopped selling transient rooms through September 30, 2006, and (3) relocated previously booked groups from the hotel to sister properties to accommodate the FEMA rooms through September 30, 2006. On this same day, you responded and asserted that the "extension of the performance period detailed in Amendment # 1 does not affect the termination provision outlined in the original agreement" (a copy of Mr. Burns' March 29, 2006 letter is attached as Exhibit "G").

## II. HOTEL ROOMS ARE A PERISHABLE COMMODITY

LAW OFFICES OF
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.



rooms, as with the rooms requested by FEMA, those rooms are removed from the market so Doubletree can fulfill the customer's order. Future potential customers are informed that no rooms are available and directed to other properties. When a customer cancels its rooms at the last minute, as FEMA has done here, Doubletree must attempt to sell the rooms on the open market. Should Doubletree fail to sell its rooms before the day passes, the rooms have "spoiled," and the revenue is forever lost.

## III. LIABILITY OF FEMA

Due to FEMA's improper termination of the Contract, Doubletree suffered an unrecoverable loss in revenue. Doubletree's loss was proximately caused by FEMA's failure to honor its performance obligation under Order No. DSFE06-05-P-6347. In reliance upon the Amendment, which FEMA issued unilaterally, Doubletree (1) stopped selling group rooms through September 30, 2006, (2) stopped selling transient rooms through September 30, 2006, and (3) relocated previously booked groups from the hotel to other properties to accommodate the FEMA rooms through September 30, 2006.

In your March 29, 2006 letter, you opined that the Amendment did not affect the termination provision outlined in the Contract. Even if this were true, which Doubletree disputes, FEMA's termination was improper. Under the terms of the original Contract, all parties had the right to exit *after* six (6) months with a 30-day notice in writing. FEMA gave notice, on March 24, 2006, ***before six (6) months had elapsed.*** As a result, FEMA's notice is without effect. FEMA did not properly terminate the Contract, and FEMA owes Doubletree compensation for its lost revenue.

Even if FEMA terminated the Contract for its convenience, which was not FEMA's stated reason, FEMA owes Doubletree its reasonable charges/damages incurred as a result of FEMA's early termination. As indicated above, Doubletree (1) stopped selling group rooms through September 30, 2006, (2) stopped selling transient rooms through September 30, 2006, and (3) relocated previously booked groups from the hotel to other properties upon FEMA's execution of the contract extension. FEMA personnel reiterated FEMA's commitment to occupy the hotel through September 30, 2006 on multiple occasions. Doubletree relied on FEMA's promise to its detriment and should be compensated for its reasonable damages. When FEMA required rooms from Doubletree, it reserved as many hotel rooms as it could and then simply discarded those rooms despite its contractual obligations and the fact that Doubletree had removed those rooms from the market for FEMA's use.

LAW OFFICES OF
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.



## IV. DEMAND FOR COMPENSATION & COMPUTATION OF DAMAGES

In compliance with its obligation to FEMA and in reliance upon FEMA's Contract Amendment and repeated promises, Doubletree (1) stopped selling group rooms through September 30, 2006, (2) stopped selling transient rooms through September 30, 2006, and (3) relocated previously booked groups from the hotel to other properties. Due to FEMA's improper termination of the Contract, Doubletree suffered an unrecoverable loss in revenue. Doubletree's loss was proximately caused by FEMA's failure to honor its performance obligation under Order No. DSFE06-05-P-6347. Doubletree relied on FEMA's promise to its detriment and should be compensated for its damages.

### A. The contract extended through September 30, 2006

As stated above, Doubletree received Order No. DSFE06-05-P-6347 on September 18, 2005. On September 30, 2005, FEMA unilaterally prepared and executed "Amendment #1" to Order No. DSFE06-05-P-6347. By its terms, the Amendment extended the performance period of the Contract until September 30, 2006. As the 30-day termination notice was tied to the conclusion of the original Contract, all terms of the original Contract were extended for an additional six months, including the right of either party to terminate the agreement but only on 30-days notice after the performance period of the Contract. Contrary to its own unilateral extension, FEMA wrongfully terminated its Contract on April 23, 2006.

FEMA terminated with 160 days remaining under its Contract. Under the terms of the Contract, Doubletree was required to provide, and FEMA was required to let, 250 rooms per day; therefore, FEMA was obligated to lease 40,000 room nights at a minimum rate of $129.00 per night. After FEMA's breach of the Contract, Doubletree was able to lease 10,032 of the 40,000 rooms allocated to the FEMA block, representing a loss of 29,968 room nights. Despite Doubletree's best efforts to mitigate its damages, FEMA's wrongful termination of Order No. DSFE06-05-P-6347 resulted in $3,865,872 in lost revenue (*See* Exhibit "H" attached).

### B. Termination for convenience, reasonable charges

If FEMA terminated Doubletree's contract for convenience (which was not its stated reason), Doubletree is entitled to remuneration for its reasonable charges. According to Smith Travel Research ("STR"), during calender years 2003-2005, Doubletree averaged over 100% in its

LAW OFFICES OF

SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.



regarding rooms available for occupancy, rooms sold, and room revenue on over 24,500 hotels representing more than 2.9 million rooms.

The STR Occupancy and RevPar Index is the best measurement of whether a particular hotel is getting 100% of the average revenue per available room generated by the hotel's competitive set. Exhibit "I" is based upon information obtained from STR. As identified in the exhibit, Doubletree's competitive set includes the Courtyard Convention Center, Embassy Suites, Hilton Garden Inn, Holiday Inn Convention Center, Renaissance Arts and Renaissance Pere Marquette.

Specifically, from 2003-2005, Doubletree averaged 122.2% for the month of May, 124.0% for the month of June, 133.9% for the month of July, 131.4% for the month of August, and 121.6% for the month of September as compared to its competitive set. In 2006, Doubetree's competitive set occupancy was 48.8% for the month of May, 47.0% for the month of June, 37.5% for the month of July, 50.3% for the month of August, and 50.8% for the month of September. By comparison, after FEMA wrongfully terminated the Contract and discarded the rooms it had agreed to let, Doubletree's actual occupancy for the same time period was 28.1% for the month of May, 41.0% for the month of June, 26.6% for the month of July, 33.0% for the month of August and 34.2% for the month of September.

Given the performance of Doubletree's competitive set and Doubletree's historical average as established by STR, had Doubletree not removed its rooms from the market in reliance upon FEMA's contract and subsequent promises, its occupancy rate would have been 59.6% for May, 58.2% for June, 50.2% for July, 66.1% for August, and 61.7% for September. Based upon the foregoing occupancy rates, Doubletree was prevented from leasing 14,803 rooms by FEMA's early termination of Order No. DSFE06-05-P-6347; consequently, Doubletree's reasonable charges for FEMA's breach of contract is $1,909,587, representing the rooms Doubletree lost by committing them to FEMA.

**C. Even if termination was proper, it was premature**

By its express terms, the original Contract states that "[a]ll parties will have the right to exit after six (6) months with a 30-day notice in writing to Canal 66 Partnership DBA Doubletree Hotels." The six-month period contemplated by the original Contract ran from October 1, 2005 through March 31, 2006. Despite this requirement, FEMA delivered Standard Form 30 to the Doubletree on March 27, 2006, stating that Order No. DSFE06-05-P-6347 would terminate on April

been April 30, 2006, not April 23, 2006. FEMA purported to terminate the Contract eight days early. As evidenced by Exhibit "G," Doubletree sold all but 898 of FEMA's 1,750 contracted rooms from April 24, 2006 through April 30, 2006, resulting in $115,842 in lost revenue. FEMA should, at the very least, compensate Doubletree for this loss, which resulted directly from FEMA's premature termination of the original Contract.

## V. CONCLUSION

Following Hurricane Katrina, FEMA came to New Orleans and sought housing for the personnel with whom it had contracted to help repair and rebuild the City. FEMA approached Doubletree and asked Doubletree to guaranty that it would commit 250-300 rooms to FEMA so that its personnel could accomplish this important work. When FEMA made this request, Doubletree was in the process of trying itself to recover from the storm. Doubletree had to repair damage to the hotel, locate its staff, and ensure that the hotel could provide the high level of service its customers had come to expect. Nevertheless, despite these problems and challenges, Doubletree agreed to work with FEMA to provide the necessary housing for its personnel because of their importance to the City's recovery and rebuilding process.

FEMA's unilateral extension of the parties' Contract and then its premature and wrongful termination of the Contract greatly harmed Doubletree and its efforts to reopen its hotel to the general public. By committing to let 250-300 rooms from Doubletree until September 30, 2006, FEMA "bought" those rooms and effectively removed them from the market. FEMA's decision to abandon its Contract with Doubletree and renege on its own unilateral extension of the Contract prevented Doubletree from leasing those rooms. FEMA's actions appear to reflect a selfishness and callousness to the effects of its actions on local businesses at a time when they already have many hurdles to overcome in trying to reestablish themselves in the wake of Hurricane Katrina.

Doubletree calls upon FEMA, therefore, to recognize and accept responsibility for its actions. Doubletree honored its contractual obligations to FEMA even when FEMA acted unilaterally. Now, FEMA should respect the commitments it made to Doubletree. FEMA did not have a right under the Contract, as amended by FEMA, to terminate the parties' agreement before the expiration of the extended performance period, that is, September 30, 2006. FEMA should compensate Doubletree for the losses it has suffered because of FEMA's premature and wrongful termination of the Contract, which was improper even under the original Contract. Regardless, Doubletree is entitled to the reasonable charges it incurred to guaranty the availability of its rooms to FEMA, for the

LAW OFFICES OF

SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.



If you require any additional information or have any questions, please do not hesitate to contact us.

Cordially,

James M. Garner
Joshua S. Force
Keith L. Magness

SEP. 22. 2005 4:55PM FEMA NO. 025 P. 1

# ORDER FOR SUPPLIES OR SERVICES

PAGE 1 OF 3 PAGES

IMPORTANT: Mark all packages and papers with contract and/or order numbers.

| | |
|---|---|
| 1. DATE OF ORDER: September 18, 2005 | 2. CONTRACT NO. (If any) |
| 3. ORDER NO.: HSFE06-05-P-6347 | 4. REQUISITION/REFERENCE NO.: TN00398N2005T |
| 5. SHIP TO: a. NAME OF CONSIGNEE: FEMA – JFO (DR-1603-LA); 1500 Main Street | c. CITY: Baton Rouge; d. STATE: LA; e. ZIP CODE: 70802 |
| 6. ISSUING OFFICE (Address correspondence to): Same as Block 5. | f. SHIP VIA: N/A |
| 7. TO | 8. TYPE OF ORDER |
| 9. NAME OF CONTRACTOR TIN: 86-0594279 | A. PURCHASE: Reference, Oral and Written Quotes. Please furnish the following on the terms and conditions specified on both sides of this order and on the attached sheets, if any, including delivery as indicated. This purchase is negotiated under authority of FAR 13 |
| POC: Shelley Cambre 407-827-3826 407-827-3805 (Fax) | B. DELIVERY: Except for billing instructions on the reverse, this delivery order is subject to instructions contained on this side only of this form and is issued subject to the terms and conditions of the above-numbered contract. |
| Canal 66 Partnership DBA Doubletree Hotel; 300 Canal Street | |
| d. CITY: New Orleans; e. STATE: LA; ZIP CODE: 70130 | |
| 9. ACCOUNTING AND APPROPRIATION DATA: 2005-06-1603DR-9064-XXXX-2327-D | 10. REQUISITIONING OFFICE: SAME AS BLOCK #5 |

11. BUSINESS CLASSIFICATION (Check appropriate box(es)): a. SMALL X b. OTHER THAN SMALL c. DISADVANTAGED d. WOMEN-OWNED

| 12. F.O.B. POINT | 14. GOVERNMENT B/L NO. | 15. DELIVER TO F.O.B. POINT ON OR BEFORE (Date) | 16. DISCOUNT TERMS |
|---|---|---|---|
| DESTINATION | | AS REQUIRED | NET 30 |
| 13. PLACE OF: a. INSPECTION: DESTINATION; b. ACCEPTANCE: FEMA | | | |

17. SCHEDULE (See reverse for Rejections)

| ITEM NO. (a) | SUPPLIES OR SERVICES (b) | QUANTITY ORDERED (c) | UNIT (d) | UNIT PRICE (e) | AMOUNT (f) | QUANTITY ACCEPTED (g) |
|---|---|---|---|---|---|---|

Doubletree Hotel in New Orleans, LA will provide 250-300 rooms at $129.00 - $169.00 per night depending on the amount oe persons per room for six (6) months which totals $9,126,000 from 10-1-05 to 3-31-06. These rooms will provide alternative housing solution and hotel rental for displaced applicants. There will be a mandatory $40.00 flat per day, per person charge for food and beverage which includes breakfast buffet, boxed light lunch, and dinner buffet. Maximum three (3) persons per room. The hotel will commit sixty (60) parking spots to FEMA in Doubletree's parking lot for a daily charge per vehicle of $15.00 flat with in/out access. All other incidental charges will be the responsibility of the tenants. All parties will have the right to exit after six (6) months with a 30-day notice in writing to Canal 66 Partnership DBA Doubletree Hotels. The Government is obligated only to the rental of 250-300 rooms on this contract. Prices to the Government shall be equal to or better than those charged to your most favored commercial customers for comparable services under similar terms and conditions.

Project Officer: David L. Porter, Housing Area Command Telephone: 202-646-3883

Invoices: Send original invoice to address in Block 21 below and copy to address in Block 5. Be sure and put the Disaster Number DR-1603-LA on the invoice and read pages 2 and 3.

FEDERAL TAX EXEMPT #52-122-7911

EXHIBIT "A"

| | | | | |
|---|---|---|---|---|
| SEE BILLING INSTRUCTIONS ON REVERSE | 18. SHIPPING POINT | 19. GROSS SHIPPING WEIGHT | 20. INVOICE NO. | 17(h) TOT (Cont. pages) |
| | 21. MAIL INVOICE TO: a. NAME: FEMA DISASTER FINANCE CENTER (540) 542-7300 | | | |
| | b. STREET ADDRESS (or P.O. Box): P.O. BOX 800 ATTN: VENDOR PAYMENTS (DR-1603-LA) | | NTE $9,126,000.00 | 17(i) GRAND TOTAL |
| | c. CITY | d. STATE | e. ZIP CODE | |

SUPPLEMENTAL INVOICING INFORMATION

If desired, this order (or copy thereof) may be used by the Contractor as the Contractor's invoice, instead of a separate invoice, provided the following statement, (signed and dated) is on (or attached to) the order: "Payment is requested in the amount of $__________ - No other invoice will be submitted." However, if the Contractor wishes to submit an invoice, the following information must be provided: contract number (if any), order number, item number(s), description of supplies or services, sizes, quantities, unit prices, and extended totals. Prepaid shipping costs will be indicated as a separate item on the invoice. Where shipping costs exceed $10 (except for parcel post), the billing must be supported by a bill of lading receipt. When several orders are invoiced to an ordering activity during the same billing period, consolidated periodic billings are encouraged.

RECEIVING REPORT

Quantity in the "Quantity Accepted" column on the face of this order has been: ☐ inspected, ☐ accepted, ☐ received by me and conforms to contract. Items listed below have been rejected for the reasons indicated.

| SHIPMENT NUMBER | PARTIAL / FINAL | | DATE RECEIVED | SIGNATURE OF AUTHORIZED U.S. GOV'T REP. | DATE |
|---|---|---|---|---|---|
| TOTAL CONTAINERS | | GROSS WEIGHT | RECEIVED AT | TITLE | |

REPORT OF REJECTIONS

| ITEM NO. | SUPPLIES OR SERVICES | UNIT | QUANTITY REJECTED | REASON FOR REJECTION |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## SUPPLEMENTAL INVOICING INFORMATION

If desired, this order (or copy thereof) may be used by the Contractor as the Contractor's invoice, instead of a separate invoice, provided the following statement, (signed and dated) is on (or attached to) the order: "Payment is requested in the amount of $__________ - No other invoice will be submitted." However, if the Contractor wishes to submit an invoice, the following information must be provided: contract number (if any), order number, item number(s), description of supplies or services, sizes, quantities, unit prices, and extended totals. Prepaid shipping costs will be indicated as a separate item on the invoice. Where shipping costs exceed $10 (except for parcel post), the billing must be supported by a bill of lading receipt. When several orders are invoiced to an ordering activity during the same billing period, consolidated periodic billings are encouraged.

## RECEIVING REPORT

Quantity in the "Quantity Accepted" column on the face of this order has been: ☐ inspected, ☐ accepted, ☐ received by me and conforms to contract. Items listed below have been rejected for the reasons indicated.

| SHIPMENT NUMBER | PARTIAL / FINAL | | DATE RECEIVED | SIGNATURE OF AUTHORIZED U.S. GOVT REP. | DATE |
|---|---|---|---|---|---|
| TOTAL CONTAINERS | | GROSS WEIGHT | RECEIVED AT | TITLE | |

## REPORT OF REJECTIONS

| ITEM NO. | SUPPLIES OR SERVICES | UNIT | QUANTITY REJECTED | REASON FOR REJECTION |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# ORDER FOR SUPPLIES OR SERVICES

COPY

PAGE 1 OF PAGES 1

IMPORTANT. Mark all packages and papers with contract and/or order numbers.

1. DATE OF ORDER: September 30, 2005
2. CONTRACT NO. (If any):
3. ORDER NO. Amendment #1 HSFE06-05-P-6347
4. REQUISITION/REFERENCE NO. TN00094N2006T TN00398N2005T
5. ISSUING OFFICE (Address correspondence to): Same as Block 5

6. SHIP TO:
a. NAME OF CONSIGNEE: FEMA – JFO (DR-1603-LA)
b. STREET ADDRESS: 415 N. 15th Street
c. CITY: Baton Rouge
d. STATE: LA
e. ZIP CODE: 70802
f. SHIP VIA: N/A

7. TO
a. NAME OF CONTRACTOR TIN: ~~72-1075884~~ 820594279N
POC: Shelley Cambre 407-827-3826 407-827-3805 (Fax)
Canal 66 Partnership
DBA Doubletree Hotel
300 Canal Street
d. CITY: New Orleans
e. STATE: LA
ZIP CODE: 70130

8. TYPE OF ORDER
A. PURCHASE
Reference. Oral and Written Quotes
Please furnish the following on the terms and conditions specified on both sides of this order and on the attached sheets, if any, including delivery as indicated.
This purchase is negotiated under authority of FAR 13
B. DELIVERY
Except for billing instructions on the reverse, this delivery order is subject to instructions contained on this side only of this form and is issued subject to the terms and conditions of the above-numbered contract.

9. ACCOUNTING AND APPROPRIATION DATA
2005-06-1603DR-9064-XXXX-2327-D
2006-06-1603DR-9064-XXXX-2327-D

10. REQUISITIONING OFFICE: SAME AS BLOCK #5

11. BUSINESS CLASSIFICATION (Check appropriate box(es))
a. SMALL X b. OTHER THAN SMALL c. DISADVANTAGED d. WOMEN-OWNED

12. F.O.B. POINT: DESTINATION
13. PLACE OF
a. INSPECTION: DESTINATION
b. ACCEPTANCE: FEMA
14. GOVERNMENT B/L NO.:
15. DELIVER TO F.O.B. POINT ON OR BEFORE (Date): AS REQUIRED
16. DISCOUNT TERMS: NET 30

17. SCHEDULE (See reverse for Rejections)

| ITEM NO. (a) | SUPPLIES OR SERVICES (b) | QUANTITY ORDERED (c) | UNIT (d) | UNIT PRICE (e) | AMOUNT (f) | QUANTITY ACCEPTED (g) |
|---|---|---|---|---|---|---|

<u>Amendment #1</u>

This amendment is to add additional funding of $675,000 for 250 parking spaces. The new grand total is NOT TO EXCEED (NTE) $9,801,000.00. The hotel will commit to 250 parking spaces for displaced applicants in Doubletree's parking lot for a daily charge per vehicle of $15.00 flat with in/out access. The room rates are $129.00 for single occupancy; $149.00 for double occupancy; and $169.00 for triple occupancy.

Performance Period has been changed to 10/4/05 to 9/30/06

<u>Project Officer</u>: David Porter, Housing Area Command Telephone: 202-646-3883
<u>Invoices</u>: Send original invoice to address in Block 21 below and copy to address in Block 5. Be sure and put the Disaster Number DR-1603-LA on the invoice and read pages 2-3.

FEDERAL TAX EXEMPT #52-122-7911

SEE BILLING INSTRUCTIONS ON REVERSE

18. SHIPPING POINT:
19. GROSS SHIPPING WEIGHT:
20. INVOICE NO.:
17(h) TOT. (Cont. pages)

21. MAIL INVOICE TO:
a. NAME: FEMA DISASTER FINANCE CENTER (540) 542-7300
b. STREET ADDRESS (or P.O. Box): P.O. BOX 800 ATTN: VENDOR PAYMENTS (DR-1603-LA)
c. CITY: BERRYVILLE
d. STATE: VA
e. ZIP CODE: 22611

NTE $9,801,000.00 — 17(i) GRAND TOTAL

22. UNITED STATES OF AMERICA BY (Signature) [signature]
23. NAME (Typed): GEORGIA SELLS 225-336-6557 or 817-978-8659
TITLE: CONTRACTING/ORDERING OFFICER

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION NOT USABLE

OPTIONAL FORM 347 (REV. 6/95)
PRESCRIBED BY GSA/FAR 48 CFR 53.213(f)

EXHIBIT

OBLIGATED 569,000.00

PAT SHIMON
General Manager

DoubleTree Hotel™
New Orleans

300 Canal Street
New Orleans, Louisiana 701
(504) 581-1300
Fax 504-522-4100

February 10, 2006

Ms. Tena Vollmer
Comptroller

**HAND DELIVERED**

Dear Tena,

This letter will confirm our recent discussions regarding the services currently being provided to FEMA by the Doubletree New Orleans Hotel under the contract dated September 30, 2005, as amended on October 4, 2005. During our discussion, you indicated that FEMA may wish to discontinue the contracted food and beverage services. If FEMA makes this decision, it would represent a substantial loss of revenue to the Hotel. Although the Hotel stands ready, willing and able to fulfill its obligations under the contract with respect to food and beverage services, we are willing to consider allowing FEMA to discontinue meals effective March 31, 2006. We have chosen this date because it would take time for the Hotel to convert from a banquet buffet operation and also to provide sufficient time for your guests to adjust to the change in meal service.

We were pleased to have you reconfirm that FEMA will honor the guest room commitment of 250 rooms per night at the contracted rate through September 30, 2006 per the contract amendment. If at a future date, FEMA wishes to discuss with the Hotel any reduction in the contracted room block, we will consider whether it makes sense for the Hotel to agree to such a reduction and to attempt to resell those rooms to help mitigate FEMA's responsibility to pay for the entire contracted block.

We greatly value our relationship with FEMA and we appreciate the business you have brought to the Hotel, especially during this difficult time for the City of New Orleans. We want to continue to work closely with you to provide the guest rooms and other services to your guests. I also want to express to you my personal thanks for your efforts to expedite payment to the Hotel to get us current on the amounts owed by FEMA under our contract.

Sincerely,

Patrick M. Shimon, CHA
General Manager

FEMA

March 15, 2006 is the deadline to remain in the hotel. FEMA would like to assist you in exploring housing options. In order to provide the best assistance, it is necessary that FEMA obtain pertinent information for ALL residents in the hotel no later than Tuesday, March 7, 2006. You need to contact a Community Relations Officer located in the hotel lobby by noon March 7, or your door key will be de-activated. We apologize for the inconvenience. This applies to all FEMA contract hotel rooms.

Attached are the following documents that need to be submitted:

1. 2 page Questionnaire
2. 90-69 Form (Privacy Act/Declaration of Citizenship)
3. Pre-Placement Interview (If requesting a Travel Trailer)
4. Release of Information Form (For possible future assistance with Voluntary Agencies)

Please fill these forms out completely and return to FEMA Community Relations Staff

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

BPA NO. | 1. CONTRACT ID CODE | PAGE 1

2. AMENDMENT/MODIFICATION NO.: P00003

3. EFFECTIVE DATE: 3/24/2006

4. REQUISITION/PURCHASE REQ. NO.:

5. PROJECT NO. (If applicable):

6. ISSUED BY — CODE
Federal Emergency Management Agency
Financial & Acquisition Management Div.
500 C Street, S.W., Room 350
Washington DC 20472

7. ADMINISTERED BY (If other than Item 6) — CODE
Federal Emergency Management Agency
AFO NO
1 Seine Court
New Orleans LA 70114

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)
Canal 66 Partnership
DBA Doubletree Hotel
300 Canal Street
New Orleans LA 70130

CODE | FACILITY CODE

(X) 9A. AMENDMENT OF SOLICITATION NO.:

9B. DATED (SEE ITEM 11):

X 10A. MODIFICATION OF CONTRACT/ORDER NO.: HSFE06-05-P-6347

10B. DATED (SEE ITEM 13): 09-30-2005

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extend
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning __________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (X) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: Mutual Agreement of Parties |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of MODIFICATION P00003 is to give Contractor 30 day notice to terminate agreement.

ACCORDINGLY:
The Federal Government will exercise the right to exit this agreement with a 30 day notice anytime after six months from date of order. Therefore, this agreement between Canal 66 Partnership and the Government will terminate on April 23, 2006.
All other terms and conditions remain unchanged and in full force and effect.

END OF MODIFICATION P00003

EXHIBIT "E"

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
Kevin J. Burns
Contracting Officer

15B. CONTRACTOR/OFFEROR

PAT SHIMON
GENERAL MANAGER

DOUBLETREE HOTEL™
NEW ORLEANS

500 CANAL STREET
NEW ORLEANS, LOUISIANA 70130
(504) 581-1300
FAX 504-522-4100

March 29, 2006

Dear Mr. Kevin Burns,

We received your termination agreement by fax on March 27, 2006. The notice says this is by mutual agreement of the parties. This is not valid, we have never agreed to an early termination and will not sign such a document, and we do not accept said termination.

Obviously, you have not acquainted yourself with the original contract. The "original" intent/terms was for each party to evaluate after the term of the contract, 10/01/05 – 3/31/06 or 6 months to determine if they wanted to re-new the contract for a period of time. At that time, 1) we were selling group rooms after 3/31/06 and 2) opened to Transient. On 10/04/05 when FEMA requested an extension until 9/30/06… it states:
Amendment #1

1. Additional Parking spaces
2. Performance Period has been changed to 10/04/05 to 9/30/06.

That is the intent… at which time, 1) We stopped selling group rooms through 9/30/06 2) We stopped selling Transient rooms through 9/30/06 and 3) Relocated groups from our hotel to sister properties to accommodate FEMA rooms from 04/01/06 – 9/30/06.

We will be happy to let any court/jury determine the intent of the original contract. Over the last 30 days, prior to your "input", we have had no less then 4 FEMA reps assure us we had a long-term contract until 09/30/06. We will be happy to provide their names.

Kevin, we would like to arrive at an amicable solution. The DTNO has lived up to its commitment and now FEMA needs to do the right thing.

Sincerely,

Patrick M. Shimon, CHA
General Manager

EXHIBIT
"F"

U.S. Department of Homeland Security
Joint Field Office
415 N. 15th Street
Baton Rouge, LA 70801
225-389-7274
225-379-3658(Fax)

FEMA

March 29, 2006

Doubletree Hotel
Mr. Pat Shimon, GM
Canal 66 Partnership
300 Canal Street
New Orleans, LA 70130

Dear Mr. Shimon;

This letter is to serve as supplemental notice that the Federal Emergency Management Agency (FEMA) is exercising the Government's 30-day notice to terminate this Agreement, Purchase Order HSFE06-05-P-6347. Pursuant to the terms of the Agreement, the Government may terminate the Agreement with 30-days notice after the initial 6-month term. Please note that the extension of the performance period detailed in Amendment #1 does not affect the termination provision outlined in the original Agreement.

A Modification to the Agreement was delivered to you on March 24, 2006, and therefore is the effective date of notice of termination. Accordingly, April 23, 2006 will be the last day of reimbursement by the Government.

It has been a pleasure working with your Hotel and we appreciate all the hard work and effort you and your staff have given in helping New Orleans recover from this unprecedented Disaster.

Sincerely,

Kevin J. Burns
Contracting Officer

# DOUBLETREE NEW ORLEANS
# FEMA CALCULATION

| | |
|---|---|
| April | 115,842 |
| May | 760,068 |
| June | 625,134 |
| July | 855,915 |
| August | 773,226 |
| September | 735,687 |
| Total | 3,865,872 |

DOUBLETREE NEW ORLEANS
FEMA
APRIL 2006

| Date | FEMA Rooms Contracted | FEMA Block Sold & Occupied | Lost Rooms | FEMA ADR | Lost Revenue |
|---|---|---|---|---|---|
| 4/24 | 250 | 29 | 221 | 129.00 | 28,509 |
| 4/25 | 250 | 63 | 187 | 129.00 | 24,123 |
| 4/26 | 250 | 105 | 145 | 129.00 | 18,705 |
| 4/27 | 250 | 107 | 143 | 129.00 | 18,447 |
| 4/28 | 250 | 215 | 35 | 129.00 | 4,515 |
| 4/29 | 250 | 273 | - | 129.00 | - |
| 4/30 | 250 | 83 | 167 | 129.00 | 21,543 |
| April Totals | | | | | 115,842 |

DOUBLETREE NEW ORLEANS
FEMA
MAY 2006

| Date | FEMA Rooms Contracted | FEMA Block Sold & Occupied | Lost Rooms | FEMA ADR | Lost Revenue |
|---|---|---|---|---|---|
| 5/1 | 250 | 33 | 217 | 129.00 | 27,993 |
| 5/2 | 250 | 37 | 213 | 129.00 | 27,477 |
| 5/3 | 250 | 45 | 205 | 129.00 | 26,445 |
| 5/4 | 250 | 69 | 181 | 129.00 | 23,349 |
| 5/5 | 250 | 155 | 95 | 129.00 | 12,255 |
| 5/6 | 250 | 170 | 80 | 129.00 | 10,320 |
| 5/7 | 250 | 54 | 196 | 129.00 | 25,284 |
| 5/8 | 250 | 43 | 207 | 129.00 | 26,703 |
| 5/9 | 250 | 66 | 184 | 129.00 | 23,736 |
| 5/10 | 250 | 42 | 208 | 129.00 | 26,832 |
| 5/11 | 250 | 27 | 223 | 129.00 | 28,767 |
| 5/12 | 250 | 42 | 208 | 129.00 | 26,832 |
| 5/13 | 250 | 55 | 195 | 129.00 | 25,155 |
| 5/14 | 250 | 3 | 247 | 129.00 | 31,863 |
| 5/15 | 250 | 26 | 224 | 129.00 | 28,896 |
| 5/16 | 250 | 47 | 203 | 129.00 | 26,187 |
| 5/17 | 250 | 52 | 198 | 129.00 | 25,542 |
| 5/18 | 250 | 20 | 230 | 129.00 | 29,670 |
| 5/19 | 250 | 41 | 209 | 129.00 | 26,961 |
| 5/20 | 250 | 52 | 198 | 129.00 | 25,542 |
| 5/21 | 250 | 47 | 203 | 129.00 | 26,187 |
| 5/22 | 250 | 79 | 171 | 129.00 | 22,059 |
| 5/23 | 250 | 78 | 172 | 129.00 | 22,188 |
| 5/24 | 250 | 35 | 215 | 129.00 | 27,735 |
| 5/25 | 250 | 21 | 229 | 129.00 | 29,541 |
| 5/26 | 250 | 64 | 186 | 129.00 | 23,994 |
| 5/27 | 250 | 175 | 75 | 129.00 | 9,675 |
| 5/28 | 250 | 89 | 161 | 129.00 | 20,769 |
| 5/29 | 250 | 39 | 211 | 129.00 | 27,219 |
| 5/30 | 250 | 74 | 176 | 129.00 | 22,704 |
| 5/31 | 250 | 78 | 172 | 129.00 | 22,188 |
| May Totals | | | | | 760,068 |

DOUBLETREE NEW ORLEANS
FEMA
JUNE 2006

| Date | FEMA Rooms Contracted | FEMA Block Sold & Occupied | Lost Rooms | FEMA ADR | Lost Revenue |
|---|---|---|---|---|---|
| 6/1 | 250 | 72 | 178 | 129.00 | 22,962 |
| 6/2 | 250 | 120 | 130 | 129.00 | 16,770 |
| 6/3 | 250 | 123 | 127 | 129.00 | 16,383 |
| 6/4 | 250 | 26 | 224 | 129.00 | 28,896 |
| 6/5 | 250 | 46 | 204 | 129.00 | 26,316 |
| 6/6 | 250 | 76 | 174 | 129.00 | 22,446 |
| 6/7 | 250 | 59 | 191 | 129.00 | 24,639 |
| 6/8 | 250 | 53 | 197 | 129.00 | 25,413 |
| 6/9 | 250 | 66 | 184 | 129.00 | 23,736 |
| 6/10 | 250 | 95 | 155 | 129.00 | 19,995 |
| 6/11 | 250 | 17 | 233 | 129.00 | 30,057 |
| 6/12 | 250 | 47 | 203 | 129.00 | 26,187 |
| 6/13 | 250 | 68 | 182 | 129.00 | 23,478 |
| 6/14 | 250 | 79 | 171 | 129.00 | 22,059 |
| 6/15 | 250 | 64 | 186 | 129.00 | 23,994 |
| 6/16 | 250 | 76 | 174 | 129.00 | 22,446 |
| 6/17 | 250 | 107 | 143 | 129.00 | 18,447 |
| 6/18 | 250 | 25 | 225 | 129.00 | 29,025 |
| 6/19 | 250 | 31 | 219 | 129.00 | 28,251 |
| 6/20 | 250 | 63 | 187 | 129.00 | 24,123 |
| 6/21 | 250 | 82 | 168 | 129.00 | 21,672 |
| 6/22 | 250 | 116 | 134 | 129.00 | 17,286 |
| 6/23 | 250 | 198 | 52 | 129.00 | 6,708 |
| 6/24 | 250 | 214 | 36 | 129.00 | 4,644 |
| 6/25 | 250 | 172 | 78 | 129.00 | 10,062 |
| 6/26 | 250 | 189 | 61 | 129.00 | 7,869 |
| 6/27 | 250 | 150 | 100 | 129.00 | 12,900 |
| 6/28 | 250 | 111 | 139 | 129.00 | 17,931 |
| 6/29 | 250 | 58 | 192 | 129.00 | 24,768 |
| 6/30 | 250 | 51 | 199 | 129.00 | 25,671 |
| June Totals | | | | | 625,134 |

DOUBLETREE NEW ORLEANS
FEMA
JULY 2006

| Date | FEMA Rooms Contracted | FEMA Block Sold & Occupied | Lost Rooms | FEMA ADR | Lost Revenue |
|---|---|---|---|---|---|
| 7/1 | 250 | 114 | 136 | 129.00 | 17,544 |
| 7/2 | 250 | 23 | 227 | 129.00 | 29,283 |
| 7/3 | 250 | 4 | 246 | 129.00 | 31,734 |
| 7/4 | 250 | 7 | 243 | 129.00 | 31,347 |
| 7/5 | 250 | 23 | 227 | 129.00 | 29,283 |
| 7/6 | 250 | 17 | 233 | 129.00 | 30,057 |
| 7/7 | 250 | 25 | 225 | 129.00 | 29,025 |
| 7/8 | 250 | 24 | 226 | 129.00 | 29,154 |
| 7/9 | 250 | 6 | 244 | 129.00 | 31,476 |
| 7/10 | 250 | 57 | 193 | 129.00 | 24,897 |
| 7/11 | 250 | 96 | 154 | 129.00 | 19,866 |
| 7/12 | 250 | 87 | 163 | 129.00 | 21,027 |
| 7/13 | 250 | 73 | 177 | 129.00 | 22,833 |
| 7/14 | 250 | 79 | 171 | 129.00 | 22,059 |
| 7/15 | 250 | 69 | 181 | 129.00 | 23,349 |
| 7/16 | 250 | 17 | 233 | 129.00 | 30,057 |
| 7/17 | 250 | 39 | 211 | 129.00 | 27,219 |
| 7/18 | 250 | 33 | 217 | 129.00 | 27,993 |
| 7/19 | 250 | 36 | 214 | 129.00 | 27,606 |
| 7/20 | 250 | 18 | 232 | 129.00 | 29,928 |
| 7/21 | 250 | 26 | 224 | 129.00 | 28,896 |
| 7/22 | 250 | 32 | 218 | 129.00 | 28,122 |
| 7/23 | 250 | - | 250 | 129.00 | 32,250 |
| 7/24 | 250 | 11 | 239 | 129.00 | 30,831 |
| 7/25 | 250 | 29 | 221 | 129.00 | 28,509 |
| 7/26 | 250 | 27 | 223 | 129.00 | 28,767 |
| 7/27 | 250 | 10 | 240 | 129.00 | 30,960 |
| 7/28 | 250 | 61 | 189 | 129.00 | 24,381 |
| 7/29 | 250 | 72 | 178 | 129.00 | 22,962 |
| 7/30 | 250 | - | 250 | 129.00 | 32,250 |
| 7/31 | 250 | - | 250 | 129.00 | 32,250 |
| July Totals | | | | | 855,915 |

DOUBLETREE NEW ORLEANS
FEMA
AUGUST 2006

| Date | FEMA Rooms Contracted | FEMA Block Sold & Occupied | Lost Rooms | FEMA ADR | Lost Revenue |
|---|---|---|---|---|---|
| 8/1 | 250 | 45 | 205 | 129.00 | 26,445 |
| 8/2 | 250 | 59 | 191 | 129.00 | 24,639 |
| 8/3 | 250 | 37 | 213 | 129.00 | 27,477 |
| 8/4 | 250 | 46 | 204 | 129.00 | 26,316 |
| 8/5 | 250 | 61 | 189 | 129.00 | 24,381 |
| 8/6 | 250 | 29 | 221 | 129.00 | 28,509 |
| 8/7 | 250 | 29 | 221 | 129.00 | 28,509 |
| 8/8 | 250 | 58 | 192 | 129.00 | 24,768 |
| 8/9 | 250 | 185 | 65 | 129.00 | 8,385 |
| 8/10 | 250 | 277 | - | 129.00 | - |
| 8/11 | 250 | 287 | - | 129.00 | - |
| 8/12 | 250 | 274 | - | 129.00 | - |
| 8/13 | 250 | 46 | 204 | 129.00 | 26,316 |
| 8/14 | 250 | 29 | 221 | 129.00 | 28,509 |
| 8/15 | 250 | 48 | 202 | 129.00 | 26,058 |
| 8/16 | 250 | 42 | 208 | 129.00 | 26,832 |
| 8/17 | 250 | 26 | 224 | 129.00 | 28,896 |
| 8/18 | 250 | 16 | 234 | 129.00 | 30,186 |
| 8/19 | 250 | 52 | 198 | 129.00 | 25,542 |
| 8/20 | 250 | 3 | 247 | 129.00 | 31,863 |
| 8/21 | 250 | 23 | 227 | 129.00 | 29,283 |
| 8/22 | 250 | 35 | 215 | 129.00 | 27,735 |
| 8/23 | 250 | 28 | 222 | 129.00 | 28,638 |
| 8/24 | 250 | 16 | 234 | 129.00 | 30,186 |
| 8/25 | 250 | 18 | 232 | 129.00 | 29,928 |
| 8/26 | 250 | 27 | 223 | 129.00 | 28,767 |
| 8/27 | 250 | - | 250 | 129.00 | 32,250 |
| 8/28 | 250 | 18 | 232 | 129.00 | 29,928 |
| 8/29 | 250 | 22 | 228 | 129.00 | 29,412 |
| 8/30 | 250 | 8 | 242 | 129.00 | 31,218 |
| 8/31 | 250 | - | 250 | 129.00 | 32,250 |
| August Totals | | | | | 773,226 |

DOUBLETREE NEW ORLEANS
FEMA
SEPTEMBER 2006

| Date | FEMA Rooms Contracted | FEMA Block Sold & Occupied | Lost Rooms | FEMA ADR | Lost Revenue |
|---|---|---|---|---|---|
| 9/1 | 250 | 54 | 196 | 129.00 | 25,284 |
| 9/2 | 250 | 107 | 143 | 129.00 | 18,447 |
| 9/3 | 250 | 79 | 171 | 129.00 | 22,059 |
| 9/4 | 250 | - | 250 | 129.00 | 32,250 |
| 9/5 | 250 | 33 | 217 | 129.00 | 27,993 |
| 9/6 | 250 | 37 | 213 | 129.00 | 27,477 |
| 9/7 | 250 | 18 | 232 | 129.00 | 29,928 |
| 9/8 | 250 | - | 250 | 129.00 | 32,250 |
| 9/9 | 250 | 24 | 226 | 129.00 | 29,154 |
| 9/10 | 250 | - | 250 | 129.00 | 32,250 |
| 9/11 | 250 | 34 | 216 | 129.00 | 27,864 |
| 9/12 | 250 | 64 | 186 | 129.00 | 23,994 |
| 9/13 | 250 | 70 | 180 | 129.00 | 23,220 |
| 9/14 | 250 | 51 | 199 | 129.00 | 25,671 |
| 9/15 | 250 | 41 | 209 | 129.00 | 26,961 |
| 9/16 | 250 | 44 | 206 | 129.00 | 26,574 |
| 9/17 | 250 | 12 | 238 | 129.00 | 30,702 |
| 9/18 | 250 | 11 | 239 | 129.00 | 30,831 |
| 9/19 | 250 | 8 | 242 | 129.00 | 31,218 |
| 9/20 | 250 | 14 | 236 | 129.00 | 30,444 |
| 9/21 | 250 | 11 | 239 | 129.00 | 30,831 |
| 9/22 | 250 | 100 | 150 | 129.00 | 19,350 |
| 9/23 | 250 | 165 | 85 | 129.00 | 10,965 |
| 9/24 | 250 | 69 | 181 | 129.00 | 23,349 |
| 9/25 | 250 | 156 | 94 | 129.00 | 12,126 |
| 9/26 | 250 | 142 | 108 | 129.00 | 13,932 |
| 9/27 | 250 | 160 | 90 | 129.00 | 11,610 |
| 9/28 | 250 | 116 | 134 | 129.00 | 17,286 |
| 9/29 | 250 | 69 | 181 | 129.00 | 23,349 |
| 9/30 | 250 | 108 | 142 | 129.00 | 18,318 |
| | | | | | - |
| September Totals | | | | | 735,687 |

# DOUBLETREE NEW ORLEANS
## FEMA CALCULATION

| Description | May | June | July | August | September |
|---|---|---|---|---|---|
| 2003-2005 DTNO Occupancy Index Average - * | 122.2% | 124.0% | 133.9% | 131.4% | 121.6% |
| 2006 DTNO Occupancy Index - * | 57.6% | 87.3% | 70.9% | 65.7% | 67.3% |
| DTNO Actual Occupancy | 28.1% | 41.0% | 26.6% | 33.0% | 34.2% |
| Competitive Set Occupancy - * | 48.8% | 47.0% | 37.5% | 50.3% | 50.8% |
| DTNO Occupancy Without FEMA Based on 2003-2005 Occ. Index Avg. | 59.6% | 58.2% | 50.2% | 66.1% | 61.7% |
| DTNO Actual Occupied Rooms | 3,162 | 4,465 | 2,993 | 3,718 | 3,721 |
| DTNO Rooms that Would Have Been Occupied | 6,708 | 6,342 | 5,653 | 7,436 | 6,723 |
| Loss of Rooms Due to FEMA | 3,546 | 1,877 | 2,660 | 3,718 | 3,002 |
| FEMA ADR | $ 129.00 | $ 129.00 | $ 129.00 | $ 129.00 | $ 129.00 |
| Cost of FEMA Terminating Contract | 457,482 | 242,133 | 343,110 | 479,621 | 387,288 |

* - Information obtained from Smith Travel Research

**Competitive Set Includes**

Courtyard Convention Center
Embassy Suites
Hilton Garden Inn
Holiday Inn Convention Center
Renaissance Arts
Renaissance Pere Marquette

EX

STATE OF LOUISIANA

PARISH OF ORLEANS

## CERTIFICATION OF CLAIM

BEFORE ME, the undersigned Notary Public in and for the above named parish, came and appeared George J. Newton, III, who, after being duly sworn, did depose and state the following:

In accordance with FAR 52.233-1(d)(2)(I), I certify that the forgoing claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which Canal 66 Partnership d/b/a Doubletree Hotel ("Canal 66") believes the Government is liable; and that I am duly authorized to certify the claim on behalf of Canal 66.

GEORGE J. NEWTON, III

Sworn to and Subscribed
before me this 14th day of
December, 2006.

Notary Public

Robert P. Thibeaux
Notary Public
La. Bar No. 18482
My Commission is for Life.

FEMA

U.S. Department of Homeland Security
Federal Emergency Management Agency
Louisiana Transitional Recovery Office
415 North 15th Street
Baton Rouge, LA 70802-3702

February 20, 2007

Mr. James M. Garner
Mr. Joshua S. Force
Mr. Keith L. Magness
C/o Law Offices of Sher Garner Cahill Richter Klein & Hilbert LLC
Twenty-Eighth Floor
909 Poydras Street
New Orleans, LA 70112-1033

Re: Dispute of Termination, Purchase Order No. HSFE06-05-P-6347

Dear Sirs:

Your request for consideration of "wrongful termination" under 41USC §605, and CFR 48 Sec 33 for subject order is hereby denied.

FEMA entered into a contract with Canal 66 Partnership, dba Doubletree Hotel under order HSFE06-05-P-6347 dated September 18, 2005. This order for the rental of hotel rooms included language as follows: "All parties will have the right to exit after six (6) months with a 30-day notice in writing to Canal 66 Partnership DBA Doubletree Hotels." This contract was subsequently modified to add additional funding for 250 parking spaces and extend the contract performance period to 9/30/06 (Amendment #1) dated September 30, 2005, again with modification P00002 to administratively add "... a mandatory $40.00 flat charge per day, per person for food and beverage which includes breakfast buffet, boxed light lunch and dinner buffet will be deleted from the contract as of March 15, 2006." Modification P00004 dated August 10, 2006, provided additional funding to pay past due invoices.

On March 24, 2006, then Contracting Officer, Kevin Burns issued modification P00003, which gave the contractor a 30 day notice to terminate the agreement. The right to terminate was set forth in the basic contract dated September 18, 2005.

EXHIBIT
7

The Government's right to terminate this contract for the convenience of the Government arises from parties' agreement in the original contract to terminate with a 30 day written notice following the initial 6 month period. Notice was properly given in writing.

This letter hereby constitutes a final decision on the part of the Contracting Officer, Acquisition Gulf Coast Recovery Office as required by CFR 48 Sec 33.

Sincerely:

Rafael Roman
Director of Procurement

cc: FEMA, Office of Chief Counsel, Baton Rouge
FEMA, Project Management
File: HSFE06-05-P-6347