# In the United States Court of Federal Claims

No. 08-88C
(Filed: July 15, 2009)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| | * | |
| **CANAL 66 PARTNERSHIP d/b/a** | * | Summary Judgment; Breach of |
| **DOUBLETREE HOTEL,** | * | Contract; Purchase Order; |
| | * | Contract Interpretation; |
| Plaintiff, | * | Ambiguous Contract; Extrinsic |
| | * | Evidence. |
| v. | * | |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * ** * * * * | | |

James M. Garner, Sher Garner Cahill Richter Klein & Hilbert, LLC, 909 Poydras Street, 28th Floor, New Orleans, LA, for Plaintiff. Joshua S. Force, Of Counsel, for Plaintiff.

Gregory G. Katsas, Jeanne E. Davidson, Kirk Manhardt, and Christopher L. Krafchek, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, 1100 L Street, N.W., 8th Floor, Washington, D.C., for Defendant.

---

**OPINION AND ORDER DENYING CROSS-MOTIONS
FOR PARTIAL SUMMARY JUDGMENT**

---

**WILLIAMS**, Judge.

In this breach of contract action, Plaintiff Canal 66 Partnership alleges that the Federal Emergency Management Agency ("FEMA") wrongfully and prematurely terminated its purchase-order contract to provide hotel rooms in New Orleans, Louisiana for FEMA contract personnel following Hurricane Katrina. This matter comes before the Court on the parties' cross-motions for partial summary judgment. At issue is a matter of contract interpretation -- whether Defendant had the right to exit or terminate the contract some seven months into performance.

1

Under the terms of the original contract, Plaintiff was to provide 250 hotel rooms for a period of six months, from October 1, 2005, to March 31, 2006, and the parties had the right to exit after six months with a 30-day notice in writing. On September 30, 2005, FEMA issued Amendment #1, a unilateral modification that extended the performance period to September 30, 2006, but made no mention of when the parties had the right to exit the contract. On March 24, 2006, a week shy of six months into performance, FEMA provided written notice of its intent to terminate the contract, effective April 23, 2006, and subsequently ceased performance on that date. Plaintiff alleges that this termination was wrongful and amounted to a breach of contract, because Amendment #1 had extended the right-to-exit period to 12 months -- effectively guaranteeing a 12-month performance period. Defendant counters that although Amendment #1 extended the performance period, the right to exit after six months remained in place.

Because the contract is ambiguous, and there are genuine issues of material fact regarding its interpretation, the Court denies the parties' cross-motions for partial summary judgment.

## **Background**[1]

On September 30, 2005, FEMA Contracting Officer Georgia Sells issued Order for Supplies or Services No. HSFE06-05-P-6347 ("the purchase order") to Plaintiff. Def.'s App. 7.[2] The purchase order stated:

> Doubletree Hotel in New Orleans, LA will provide 250 rooms at $129.00-$169.00 per night depending on the amount of persons per room <u>for six (6) months</u> which totals $9,126,000.00 <u>from 10-1-05 to 3-31-06</u>. These rooms will provide alternative housing solution and hotel rental for displaced applicants. There will be a mandatory $40.00 flat charge per day, per person charge for food and beverage which includes breakfast buffet, boxed light lunch, and dinner buffet. Maximum three (3) persons per room. The hotel will commit to sixty (60) parking spaces for displaced applicants in Doubletree's parking lot for a daily charge per vehicle of $15.00 flat with in/out access. All other incidental charges will be the responsibility of the occupants. <u>All parties will have the right to exit after six (6) months with a 30-day notice in writing</u> to the other party. The Government is obligated only to the rental of 250 rooms on this contract. Prices to the Government shall be equal to or better than those charged to your

---

[1] This background is derived from the appendices to the parties' motion papers.

[2] Although there is another earlier version of the purchase order dated September 18, 2005, the parties agree that the September 30 version is controlling. See Compl. Ex. A; Def.'s Resp. to Pl.'s Proposed Findings of Uncontroverted Fact at 1-2; Pl.'s Resp. to Def.'s Statement of Facts at 2-3. The two versions of the purchase order differ in two respects not material here.

> most favored commercial customers for comparible [sic] services under similar terms and conditions.

Id. (emphasis added).  This purchase order was signed by Contracting Officer Sells but was not signed by any representative of Plaintiff.  See Def.'s App. 7.

On September 30, 2005, Contracting Officer Sells issued Amendment #1 to the purchase order, which stated:

> This amendment is to add additional funding of $675,000 for 250 parking spaces.  The new grand total is NOT TO EXCEED (NTE) $9,801,000.00.  The hotel will commit to 250 parking spaces for displaced applicants in Doubletree's parking lot for a daily charge per vehicle of $15.00 flat with in/out access.  The room rates are $129.00 for single occupancy; $149.00 for double occupancy; and $169.00 for triple occupancy.
>
> Performance Period has been changed to 10/4/05 to 9/30/06

Def.'s App. 10 (emphasis added).  The parties began performance under the purchase order on October 1, 2005.

On February 20, 2006, a new contracting officer, Kevin Burns, issued a second amendment to the purchase order ("Amendment #2"), which stated:

> The purpose of [Amendment #2] is to make administrative changes. From the original body of [the] contract, the phrase "There will be a mandatory $40.00 flat charge per day, per person charge for food and beverage which includes breakfast buffet, boxed light lunch and dinner buffet." will be deleted from this contract as of March 15, 2006.
>
> All other terms and conditions remain unchanged and in full force and effect.

Def.'s App. 12.

On March 24, 2006, Contracting Officer Burns issued a third amendment ("Amendment #3") to the purchase order, which stated:

> The purpose of [Amendment #3] is to give Contractor 30 day notice to terminate agreement.

3

> ACCORDINGLY:
> The Federal Government will exercise the right to exit this agreement with a 30 day notice anytime after six months from date of order. Therefore, this agreement between Canal 66 Partnership and the Government will terminate on April 23, 2006.
>
> All other terms and conditions remain unchanged and in full force and effect.

Def.'s App. 14.

On March 29, 2006, Contracting Officer Burns sent a letter to Doubletree Hotel General Manager Patrick Shimon stating:

> Pursuant to the terms of the Agreement, the Government may terminate the Agreement with 30-days notice after the initial 6-month term. Please note that the extension of the performance period detailed in Amendment #1 does not affect the termination provision outlined in the original Agreement.

Def.'s App. 17.

On March 29, 2006, Mr. Shimon sent a reply to Contracting Officer Burns, stating:

> We received your termination agreement by fax on March 27, 2006. The notice says this is by mutual agreement of the parties. This is not valid, we have never agreed to an early termination and will not sign such a document, and we do not accept said termination.
>
> Obviously, you have not acquainted yourself with the original contract. The "original" intent/terms was for each party to evaluate after the term of the contract, 10/01/05 - 3/31/06 or 6 months to determine if they wanted to re-new the contract for a period of time. At that time, 1) we were selling group rooms after 3/31/06 and 2) opened to Transient. On 10/04/05 when FEMA <u>requested</u> an extension until 9/30/06 . . . it states:
>
> Amendment #1
> 1. Additional Parking spaces
> 2. Performance Period has been changed to 10/04/05 to 9/30/06.
>
> That is the intent . . . at which time, 1) We stopped selling group rooms through 9/30/06[,] 2) We stopped selling Transient rooms

>   through 9/30/06 and 3) Relocated groups from our hotel to sister properties to accommodate FEMA rooms from 04/01/06 - 9/30/06.
>
>   We will be happy to let any court/jury determine the intent of the original contract.  Over the last 30 days, prior to your "input", we have had no less than 4 FEMA reps assure us we had a long-term contract until 9/30/06.  We will be happy to provide their names.
>
>   Kevin, we would like to arrive at an amicable solution.  The DTNO has lived up to its commitment and now FEMA needs to do the right thing.

Def.'s App. 18.[3]

On December 15, 2006, Plaintiff filed a claim alleging that FEMA wrongfully terminated the contract, causing Plaintiff to suffer a loss of revenue.  Pl.'s Ex. 1.  On February 20, 2007, Contracting Officer Rafael Roman issued a final decision denying Plaintiff's claim, stating "[t]he Government's right to terminate this contract for the convenience of the Government arises from parties' agreement in the original contract to terminate with a 30 day written notice following the initial 6 month period.  Notice was properly given in writing."  Pl.'s Ex. 2.[4]  On February 14, 2008, Plaintiff filed the instant complaint, appealing the Contracting Officer's final decision under the Contract Disputes Act and seeking lost revenue and reasonable charges resulting from FEMA's alleged premature termination of the contract.

## **Discussion**

Plaintiff asserts that FEMA improperly terminated the contract after only six months of performance because, when Amendment #1 extended the performance period to 12 months, it necessarily extended the right to exit to 12 months as well.  Defendant disagrees, stating that the original six-month right to exit remained in place after Amendment #1 extended the performance period.  Plaintiff asks the Court to enter partial summary judgment adopting its interpretation of what it terms an "unambiguous" contract.  Defendant also seeks partial summary judgment, arguing that the "plain language" of the purchase order allowed either party to exit or terminate after six months, so long as the terminating party provided written notice 30 days in advance.  Alternatively, Plaintiff

---

[3] The ellipses and emphasis appear in the original quotation.

[4] Although the Contracting Officer's final decision states that FEMA terminated the contract "for the convenience of the Government," the Government's motion for partial summary judgment avers that the contract was not terminated for convenience.  Def.'s Mot. for Partial Summ. J. at 14.  The motion states that "FEMA did not terminate the contract for the convenience of the Government.  Rather, FEMA exercised its right to exit the contract by providing Doubletree with written notice 30-days prior to the date of termination."  Id.

argues that an ambiguity exists regarding whether "the termination clause was tied to the performance period and whether the Defendant was allowed to terminate the contract before the second six-month performance period expired." Pl.'s Cross-Mot. for Partial Summ. J. at 4. Plaintiff submits that under this alternative theory, extrinsic evidence may be introduced to resolve any ambiguity in the contractual language.

It is well settled that, in disputes involving contract interpretation, courts begin "by examining the plain language of the contract." M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). Where the language of the contract is clear and unambiguous, "the words of those provisions must be given their plain and ordinary meaning by the court in defining the rights and obligations of the parties." George Hyman Constr. Co. v. United States, 832 F.2d 574, 579 (Fed. Cir. 1987) (internal quotation omitted). The Court uses an objective test, applying the "'meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances.'" Metric Constructors, Inc. v. NASA, 169 F.3d 747, 752 (Fed. Cir. 1999) (quoting Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 169 Ct. Cl. 384, 388 (1965)).

Contracts are not necessarily rendered ambiguous merely because the parties disagree as to their meaning. Alliant Techsystems Inc. v. United States, 74 Fed. Cl. 566, 576 (2007) (citing S. Constr. Co. v. United States, 176 Ct. Cl. 1334, 1361, 364 F.2d 439 (1966)). Rather, a contract is deemed to contain an ambiguity where the contract is "susceptible to more than one reasonable interpretation." E.L. Hamm & Assocs. Inc. v. England, 379 F.3d 1334, 1341-42 (Fed. Cir. 2004) (citing Metric Constructors, 169 F.3d at 751). "To show an ambiguity it is not enough that the parties differ in their respective interpretations of a contract term. . . . Rather, both interpretations must fall within a 'zone of reasonableness.'" Metric Constructors, 169 F.3d at 751; see also NVT Technologies, Inc. v. United States, 370 F.3d 1153, 1161 (Fed. Cir. 2004) (concluding that both parties' interpretations of a contract fell within the "zone of reasonableness").

Plaintiff's purchase order stated:

> Doubletree Hotel in New Orleans, LA will provide 250 rooms at $129.00-$169.00 per night depending on the amount of persons per room <u>for six (6) months</u> which totals $9,126,000.00 from 10-1-05 to 3-31-06. These rooms will provide alternative housing solution and hotel rental for displaced applicants. There will be a mandatory $40.00 flat charge per day, per person charge for food and beverage which includes breakfast buffet, boxed light lunch, and dinner buffet. Maximum three (3) persons per room. The hotel will commit to sixty (60) parking spaces for displaced applicants in Doubletree's parking lot for a daily charge per vehicle of $15.00 flat with in/out access. All other incidental charges will be the responsibility of the occupants. <u>All parties will</u>

> have the right to exit after six (6) months with a 30-day notice in writing to the other party. The Government is obligated only to the rental of 250 rooms on this contract. Prices to the Government shall be equal to or better than those charged to your most favored commercial customers for comparible [sic] services under similar terms and conditions.

Def.'s App. 7 (emphasis added). A purchase order "'is an offer by the government to the supplier to buy certain supplies or services upon specific conditions. A contract is established when the supplier accepts the order, by furnishing the supplies or services ordered or by . . . substantial performance prior to the due date.'" Zhengxing v. United States, 71 Fed. Cl. 732, 738 n.21 (2006) (quoting Friedman Enters., ASBCA No. 54886, 05-2 BCA ¶ 32,991 (2005)). Here, performance began as anticipated on October 1, 2005, and a contract was formed.

Amendment #1 stated in full:

> This amendment is to add additional funding of $675,000 for 250 parking spaces. The new grand total is NOT TO EXCEED (NTE) $9,801,000.00. The hotel will commit to 250 parking spaces for displaced applicants in Doubletree's parking lot for a daily charge per vehicle of $15.00 flat with in/out access. The room rates are $129.00 for single occupancy; $149.00 for double occupancy; and $169.00 for triple occupancy.
>
> Performance Period has been changed to 10/4/05 to 9/30/06

Def.'s App. 10 (emphasis added). Plaintiff maintains that Amendment #1, by extending the performance period by six months, also necessarily extended the right-to-exit period by six months. Pl.'s Cross-Mot. for Partial Summ. J. at 9-10. Plaintiff notes that in Amendments #2 and #3, FEMA expressly stated that "[a]ll other terms and conditions remain unchanged and in full force and effect." Def.'s App. 12, 14. Because Amendment #1 lacked such language, Plaintiff argues that the six-month extension of the performance period affected not just the performance period, but "all terms and conditions of the original contract," including the right-to-exit provision. Pl.'s Cross-Mot. for Partial Summ. J. at 9.

Plaintiff's interpretation is reasonable. A reasonable contractor could conclude, based on the face of the purchase order, that the performance and termination clauses were linked and coterminous because each clause contemplated the identical six-month duration of the contract -- at least prior to Amendment #1. Then, when Amendment #1 extended the contract's performance period to 12 months, it was reasonable for the contractor to understand that the right-to-exit period was likewise extended -- albeit implicitly. Plaintiff reasonably believed that the contract should not be construed to extend the performance period to 12 months, but give either party the right to exit after six.

In contrast, the Government posits that the performance and right-to-exit clauses were not linked and that Amendment #1 did not apply to the entire contract and did not supplant the original right to exit after six months. Def.'s Opp'n at 4-10. The Government points out that no language in the termination or right-to-exit clause explicitly referenced the performance period in the original purchase order. Rather, the termination clause simply stated that "[a]ll parties will have the right to exit after six (6) months with a 30-day notice in writing to the other party." Def.'s App. 7. Further, Amendment #1 made no mention of the termination clause, or any party's right to exit or the timing of such exit. The Amendment did not expressly indicate that it would affect any term of the original contract other than the performance period and matters not at issue here -- parking spaces and room rates based upon varying occupancy numbers. Viewing the right-to-exit period as wholly separate from the performance period, the Government's interpretation also can be deemed reasonable.[5]

In Dick Pacific/GHEMM, JV v. United States, 87 Fed. Cl. 113, 124-25 (2009), Judge Lettow found a contract to be ambiguous where both parties' "interpretations draw upon aspects of the contractual language, each emphasizing particular terms and discounting others." The Court in Dick Pacific found both interpretations to be "unsatisfying, and to that extent, each is as reasonable as the other." Id. at 126. Here, as in Dick Pacific, because the language of the original contract read together with Amendment #1 is capable of more than one reasonable interpretation, the contract is ambiguous. See generally Hamm, 379 F.3d at 1341-42.

Because the contract is ambiguous, it is appropriate to examine extrinsic evidence to clarify the parties' intent in entering into their contract. See Teg-Paradigm Environmental, Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006) ("When a provision in a contract is susceptible to more than one reasonable interpretation, it is ambiguous, and we may then resort to extrinsic evidence to resolve the ambiguity. We utilize extrinsic evidence to derive a construction that effectuates the parties' intent at the time they executed the contract." (internal citation omitted)); Beta Systems, Inc. v. United States, 838 F.2d 1179, 1183 (Fed. Cir. 1988) ("To the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution."). Here, as in Dick Pacific, "a trial of the facts must be held to resolve the disputed issues associated with the ambiguity . . . ." Dick Pacific, 87 Fed. Cl. at 126; see generally Blue Lake Forest Prods., Inc. v. United States, 86 Fed. Cl. 366, 381 (2009) (stating that summary judgment is "'inappropriate if the factual record is insufficient to allow the Court to determine the salient legal issues'" (quoting Mansfield v. United States, 71 Fed. Cl. 687, 693-94 (2006))).[6]

---

[5] In addition, Plaintiff argues that the purchase order unambiguously provided that the 30-day notice of termination could be issued only after the performance period expired. By contrast, the Government argues the purchase order required a 30-day notice that a party would exit the contract prior to the expiration of the full performance period, not afterwards. These differing interpretations further highlight the ambiguity of the contract.

[6] Plaintiff also asserts that "FEMA should be equitably estopped from terminating the Contract before the end of the second six-month period." Compl. ¶ 96. Defendant initially requested that the Court dismiss the portion of Plaintiff's complaint seeking equitable estoppel. However,

**Conclusion**

1. Defendant's motion for partial summary judgment is **DENIED**.

2. Plaintiff's cross-motion for partial summary judgment is **DENIED**.

3. The Court will conduct a telephonic conference on **July 28, 2009,** at **11:00 a.m.** to schedule further proceedings.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

Plaintiff subsequently clarified that it was not raising equitable estoppel as a cause of action, but rather as an argument in support of its interpretation of the contract. Plaintiff contends that the Government should be estopped from interpreting the contract to permit termination prior to the end of the 12-month performance period. In this vein, Plaintiff appears to argue that Defendant acted in bad faith in terminating the contract prior to September 30, 2006, after FEMA personnel reconfirmed the agency's commitment to rent the rooms through September 30, 2006. Pl.'s Reply at 15-16. To the extent that Plaintiff is arguing that the Government acted in bad faith in terminating the contract, that allegation cannot be addressed on summary judgment here, as it implicates genuine issues of material fact. E.g., Keeter Trading Co., Inc. v. United States, 85 Fed. Cl. 613, 617 (2009) ("[E]ven though plaintiff's allegations of bad faith were serious, the issue of bad faith was not sufficiently developed to decide on the pending summary judgment motions.").